Date signed September 30, 2009



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Spartan Masonry Company, Inc., | * | Case No. 05-90261-WIL |
| | * | Chapter 7 |
| Debtor. | * | (Jointly Administered) |
| | * | |
| ****************************************** | | |
| | * | |
| Merill Cohen, Trustee, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Adversary No. 08-0409 |
| | * | (Consolidated Under |
| Jair Lynch /Tompkins Joint Venture and | * | Adv. Proc. No. 07-0036) |
| Tompkins Builders, Inc., | * | |
| | * | |
| Defendants. | * | |
| | * | |

*****************************************************************************

### MEMORANDUM OF DECISION

Before the Court is the Amended Complaint to Avoid Preferential Transfer and/or

Fraudulent Transfer and/or Post Petition Transfer and to Recover Property and for the

Disallowance of Claims filed by the Chapter 7 Trustee (the "Amended Complaint") and the

Defendants' Amended Answer thereto. A trial was held on January 12, 2009, at which the Court

permitted the parties to file post-trial memoranda. Post-trial briefs were filed by both parties on

January 21, 2009. The Court has reviewed the pleadings, listened to the testimony presented at the trial, examined the exhibits admitted into evidence and considered the post-trial memoranda. For the following reasons, the Court determines that judgment shall be awarded in the Trustee's favor on Count I of the Amended Complaint.

**I.      The Parties**

Spartan Masonry Company, Inc. (the "Debtor" or "Spartan") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on November 10, 2005.[1] On May 18, 2007, the Debtor's case was converted from Chapter 11 to Chapter 7 and Merrill Cohen was appointed Chapter 7 Trustee of the Debtor's case.

The Defendant, Jair Lynch/Tompkins Joint Venture ("Joint Venture"), is a District of Columbia corporation that engaged in business with the Debtor prior to the Petition Date. On or about October 20, 2004, the Debtor and the Joint Venture entered into a construction subcontract for masonry work associated with the construction of the Unified Communications Center located at 2720 Martin Luther King, Jr. Avenue, S.E., Washington, D.C. 20032 (the "UCC Project").

The Defendant, Tompkins Builders, Inc. ("Tompkins"), is also a District of Columbia corporation that engaged in business with the Debtor prior to the Petition Date. On October 20, 2004, the Debtor and Tompkins entered into two separate construction subcontracts for masonry work associated with the construction of the Capitol Hill Towers and the Courtyard Marriott, both located at 1000 New Jersey Avenue, S.E., Washington, D.C. 20003 (the "Capitol Hill

---

[1] Two entities related to the Debtor also filed voluntary Chapter 11 petitions on November 10, 2005; namely, Spartan Masonry Co., LLC (Case No. 05-90259) and Spartan Masonry Corp. of Md., Inc. (Case No. 05-90262). An Order providing for the joint administration of the three related cases was entered on November 16, 2005.

Project" and the "Marriott Project," respectively).

## II.    Background

During the Summer of 2005, Spartan was unable to meet its payroll and vendor obligations for the UCC Project. The Joint Venture advanced funds to Spartan to meet its payroll and issued joint checks to some of Spartan's suppliers/vendors during this time. By letter dated August 4, 2005, Gregory Druga, a Management Committee Member of the Joint Venture, notified Spartan that Spartan was in default of its obligations under the construction subcontract governing the UCC Project (the "UCC Subcontract"). Specifically, the August 4, 2005 letter (the "Default Letter") informed Spartan that it was in default under the UCC Subcontract for, among other reasons: (1) failure to pay employees in a timely manner; (2) failure to pay suppliers and vendors in a timely manner; and (3) failure to make payment for taxes which caused the issuance of a Notice of Levy by the IRS to Tompkins. (Defendants' Ex. 6). The Default Letter gave Spartan three days to cure the default and stated that should Spartan fail to cure within three days, the Joint Venture "shall proceed with the remedies stated in Article XI [of the UCC Subcontract] which include, but are not limited to, termination of [Spartan's] employment without further notice to Spartan Masonry Company, Inc."

By letter dated August 24, 2005, the Joint Venture notified Spartan that there were insufficient funds due to Spartan at that time to fund Spartan's payroll and other obligations with respect to the UCC Project. (Defendants' Ex. 17). The August 24, 2005 letter stated that in order to temporarily fund the shortfall, and in the interest of the Joint Venture's continued performance of the work at the UCC Project, the Joint Venture had reduced Spartan's retainage as needed to fund Spartan's weekly payroll. The next day, on August 25, 2005, Spartan

executed an Assignment of Proceeds between Spartan and the Joint Venture (the "Assignment"). Pursuant to the Assignment, Spartan assigned and pledged to the Joint Venture, "any and all amounts due or that may become due Spartan Masonry Company, Inc. by Tompkins Builders, Inc." on various projects, including the Marriott and Capitol Hill Projects, to pay any balance due the Joint Venture by Spartan or that may become due the Joint Venture by Spartan on the UCC Project. As evidenced by an email from Mr. Druga to Christopher Pappas, Spartan's Chief Executive Officer, dated August 25, 2005, the Joint Venture required Spartan to execute the Assignment in order for the Joint Venture to release the current payroll to Spartan. (Defendants' Ex. 17). It is undisputed that the Joint Venture failed to perfect a security interest in the Assignment.

In a letter dated September 20, 2005, Gregory Druga notified Christopher Pappas that in accordance with the Assignment, the Joint Venture was utilizing $190,428.66 of the $562,669.99 due Spartan on the Marriott and Capitol Hill Projects to pay the balance due the Joint Venture by Spartan on the UCC Project. (Defendants's Ex. 23). The September 20, 2005 letter stated that in order to effect this transaction, Tompkins will issue a joint check to Spartan and Tompkins on the Capitol Hill and Marriott Projects, which Spartan will sign over to Tompkins "to provide the necessary funds to the [Joint Venture] to cover [Spartan's] obligations." The Letter further stated that the Joint Venture will issue a deductive Change Order in the amount of $190,428.66 to the UCC Subcontract, which will reflect the amount of Spartan's obligations under the UCC Subcontract funded directly by the Joint Venture to Spartan's vendors and suppliers.

The actual sequence of events did not occur as contemplated. The payments to the Debtor's suppliers preceded the issuance of the Joint Check. On September 21, 2005, Turner

4

Construction Company[2] issued a check to The Quickrete Companies, one of the vendors on the UCC Project, in the amount of $13,524.22. Additionally, on September 22, 2005, Tompkins issued four checks payable to four different vendors on the UCC Project. The four checks totaled $136,698.10. The five checks (collectively, the "Vendor Payments") totaled $150,329.22.

On September 26, 2005, Turner Construction Company issued a joint check payable to Spartan and Tompkins in the amount of $150,222.32 (the "Joint Check"). The Joint Check represented $87,680.07 owed to Spartan by Tompkins on the Marriott Project and $62,542.25 owed to Spartan by Tompkins on the Capitol Hill Project. The notes on the Joint Check state: "Direct Payments to UCC Vendors" and lists the Vendor Payments totaling $150,222.32.[3] Spartan endorsed the Joint Check on or about October 3, 2005, and the Joint Check was deposited into a bank account used by the Joint Venture on or about October 3, 2005.

The Joint Venture sent Spartan additional letters of default subsequent to the execution of the Assignment. Specifically, the Joint Venture notified Spartan of Spartan's default under the UCC Subcontract by letters dated September 30, 2005 and November 10, 2005. Thereafter, by letter dated November 21, 2005, the Joint Venture notified Spartan that the UCC Subcontract was terminated for Spartan's failure to respond or take action to cure its default.

---

[2] It is this Court's understanding that Turner Construction Company is the parent company of Tompkins and that Tompkins was the paymaster for the Joint Venture during this time because the Joint Venture had not established a separate bank account.

[3] It appears that the difference between the Vendor Payments and the amount of the Joint Check, a difference of $106.90, is attributable to the payment to Ernest Maier Block Inc., one of the UCC Project vendors. The total amount of the check issued to Ernest Maier Block Inc. was $63,7756.15; however, the notes on the check indicate that only $63,669.25 of that amount was attributable to the UCC Project. (Defendants' Ex. 34).

Spartan filed its Chapter 11 Petition on November 10, 2005 (the "Petition Date"). On June 10, 2008, the Trustee filed the Amended Complaint. Count I of the Amended Complaint seeks avoidance of the Assignment and any transfers made pursuant to the Assignment as preferential transfers pursuant to 11 U.S.C. §§ 547 and 550; Count II seeks avoidance of the Assignment and any transfers made pursuant to the Assignment as fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550; Count III seeks avoidance of any post-petition transfers made pursuant to the Assignment pursuant to 11 U.S.C. §§ 549 and 550; and Count IV seeks the disallowance of any claim pursuant to 11 U.S.C § 502(d). The Defendants filed an admit/deny answer and asserted the following affirmative defenses: contemporaneous exchange; ordinary course of business; new value; and setoff and recoupment.

### III. Stipulated Facts

The parties stipulate to the following facts:

1. Spartan executed the Assignment dated August 25, 2005.
2. Spartan endorsed a joint check payable to Spartan and Tompkins in the amount of $150,222.32 (the Joint Check).
3. Spartan executed the Assignment within 90 days before the Petition Date.
4. Spartan endorsed the Joint Check within 90 days before the Petition Date.
5. Spartan executed the Assignment while it was insolvent.
6. Spartan endorsed the Joint Check while it was insolvent.

### IV. Analysis

Although the Amended Complaint asserts several causes of action, the arguments presented at trial and the post-trial submissions primarily focused on Count I— avoidance of the Assignment and any transfers made pursuant thereto, including the Joint Check, as preferential under 11 U.S.C. § 547(b). That section provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
>> (1) to or for the benefit of a creditor;
>>
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>>
>> (3) made while the debtor was insolvent;
>>
>> (4) made—
>>
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>>
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>>
>> (5) that enables such creditor to receive more than such creditor would receive if—
>>
>>> (A) the case were a case under chapter 7 of this title;
>>>
>>> (B) the transfer had not been made; and
>>>
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee, as the party seeking to avoid the Assignment and the Joint Check, has the burden of demonstrating the presence of all elements of a preference under 11 U.S.C. § 547(b). *See Smith v. Creative Financial Management, Inc. (In re Virginia-Carolina Financial Corp.)*, 954 F.2d 193, 196 (4th Cir. 1992). As set forth above, the Parties agree that Spartan executed the Assignment and endorsed the Joint Check within 90 days prior to the Petition Date (hereinafter, Spartan's execution of the Assignment and endorsement of the Joint Check are collectively referred to as the "Transfers"). The Parties also agree that the Transfers were made while Spartan was insolvent. The Parties disagree on whether: (i) the Transfers were to or for the benefit of a creditor; (ii) the Transfers were for or on account of an antecedent debt owed by the

Debtor before such Transfers were made; and (iii) the Transfers enabled the Defendants to receive more than they would have received had they not been made.

The Defendants argue that the Transfers were for the benefit of Spartan, not the Defendants. The Defendants assert that Spartan requested that its vendors on the UCC Project be paid with funds owed to Spartan for other projects and also instructed Tompkins as to the specific amounts that should be paid to the vendors. The Court rejects the Defendants' argument. First and foremost, a clear reading of the statute shows that their argument is flawed as it pertains to Tompkins. Section 547(b)(1) of the Bankruptcy Code provides that the trustee may avoid any transfer of an interest of the debtor in property that was made "to *or* for the benefit of a creditor." 11 U.S.C. § 547(b)(1) (emphasis added). This subsection is written in the disjunctive. The Joint Check was issued to Tompkins. As for the Joint Venture, the Court finds that the Transfers benefitted Spartan *and* the Joint Venture. The Joint Venture was the contractor on the UCC Project while Spartan was the subcontractor. As the contractor, the Joint Venture acted in its own best interest to assure that suppliers were paid and that the project moved forward to completion without liens being placed on the project or suppliers refusing to continue to provide necessary supplies. Accordingly, the Court finds that the Trustee satisfied this element of Section 547(b).

The Court also finds that the Transfers enabled the Defendants to receive more than they would have received had the Transfers not occurred. The Trustee testified at trial that he anticipates that general unsecured creditors of Spartan's estate will receive no distribution in light of the substantial unsecured priority claims asserted in Spartan's case. The Trustee's testimony on this point was uncontroverted. If either Defendant was permitted to retain the

proceeds of the Joint Check, it would receive more than it would receive as a general unsecured creditor of the Debtor's Chapter 7 estate.  Although the Defendants argued that the Trustee did not satisfy this element because they have a right of setoff, the Court agrees with the Trustee that the Defendants cannot meet the mutuality element of 11 U.S.C. § 553.  At the time of the Transfers, Tompkins owed money to Spartan on the Marriott and Capitol Hill Projects.  The Assignment, however, was executed in favor of the Joint Venture and the transfers made pursuant to the Assignment paid a debt owed to the Joint Venture, not Tompkins.  Section 553 of the Bankruptcy Code does not create a right of setoff, rather, it "'preserves for the creditor's benefit any setoff right that it may have under applicable nonbankruptcy law,' and 'imposes additional restrictions on a creditor seeking setoff' that must be met to impose a setoff against a debtor in bankruptcy."  *In re SemCrude, L.P.,* 399 B.R. 388, 393 (Bankr. D. Del. 2009)(*quoting Packaging Indus. Group Inc. v. Dennison Mfg. Co. Inc. (In re Sentinel Prod. Corp. Inc.*), 192 B.R. 41, 45 (N.D.N.Y. 1996)).  The additional restrictions imposed by section 553 are that the debts sought to be offset are mutual, prepetition debts.  *Id.*  Debts are considered mutual "only when 'they are due to and from the same persons in the same capacity.'"  *Id. (quoting Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 149 (2d Cir. 2002)).  Here, Tompkins owed Spartan money on the Capitol Hill and Marriott Projects, but the Joint Check was meant to reimburse the Joint Venture for advancements made to Spartan on the UCC Project.  Courts have routinely held that such triangular setoffs are impermissible in bankruptcy.  *Id.*

   That leaves one remaining element under Section 547(b)— whether the Transfers were for or on account of an antecedent debt.  The Court agrees that they were.  Although the Trustee

did not meet his burden based on the numbers alone,[4] the Court agrees that an antecedent debt existed based on the contingent liability created by the UCC Contract, and the subcontracts governing the Capitol Hill and Marriott Projects (together, the "Capitol Hill and Marriott Subcontracts"). The case law presented by the Trustee was not addressed by the Defendants, nor could the Defendants controvert the legal conclusion that a claim based on a contingent liability is sufficient to satisfy the antecedent debt element of Section 547(b).

As discussed in *Sigmon v. Royal Cake Co., Inc. (In re Cybermech, Inc.)*, 13 F.3d 818, 821-822 (4th Cir. 1994), the broad definitions contained in the Bankruptcy Code support the Trustee's position and govern this Court's analysis. The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). The Bankruptcy Code defines "debt" as a "liability on

---

[4] The Court has studied the financial information contained in the trial exhibits admitted into evidence and has considered the arguments and testimony presented at trial. In sum, the evidence and testimony were too contradictory for the Court to determine that any dollar amount was owed as an antecedent debt with regard to the UCC Project based on the financial data alone. At trial, Mr. Pappas retracted his earlier deposition testimony in which he denied that Spartan owed money to the Joint Venture and testified that Spartan owed the Joint Venture money at the time the Joint Check was issued based on a spreadsheet produced by the Defendants prior to trial. (Defendants' Ex. 25). The Defendants' witness, however, had a different interpretation of the spreadsheet. Matthew McCabe testified that the spreadsheet does not indicate that Spartan owed the Joint Venture money. Rather, the spreadsheet showed that the Joint Venture had sufficient retained funds to cover the difference between the value of the work completed by Spartan and the total payments made by the Joint Venture to Spartan, as of September 12, 2005. Mr. McCabe further testified that the letter from the Joint Venture to Spartan dated September 20, 2005, stating that Spartan owed the Joint Venture $190,428.66, was incorrect and in fact, Spartan did not owe the Joint Venture any money as of September 20, 2005. The Joint Venture did not file a proof of claim in this case and the Defendants' interpretation of the spreadsheet appears to be the more accurate explanation of the computations.

a claim." 11 U.S.C. § 101(12).  As stated in *In re Cybermech*, "Congress gave the 'broadest possible definition' to the term 'claim' in order to ensure that 'all legal obligations of the debtor, no matter how *remote or contingent*, [would] be dealt with in the bankruptcy case.'" *In re Cybermech, Inc.,* 13 F.3d at 821-822 (*quoting* S.REP. NO. 989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808)(emphasis added)).

Here, the UCC Subcontract established that Spartan would indemnify the Joint Venture if Spartan defaulted on its contractual obligations.  (Defendants' Ex. 3).  One such indemnification provision is contained in Article XI, which sets forth the remedies available to the Joint Venture in the event Spartan defaults on its obligations under the UCC Subcontract.  Article XI provides that Spartan, in addition to any other rights available to the Joint Venture under the UCC Subcontract, "agrees to indemnify, hold harmless and defend [the Joint Venture] from and against any and all claims, demands, suits, damages, judgments, liabilities, costs and expenses (including legal fees and disbursements) arising out of or related to [Spartan's] breach of any term of the [UCC Subcontract]."  Accordingly, the Joint Venture obtained a contingent claim against Spartan upon execution of the UCC Subcontract.  It is this contingent claim that creates the antecedent debt for purposes of Section 547(b).  This conclusion is strengthened by the uncontroverted facts in this case, which demonstrate that as of August 4, 2005, Spartan had defaulted on its obligations under the UCC Subcontract, as set forth in the Default Letter.  This default triggered the Debtor's indemnification obligations in favor of the Joint Venture, reinforcing the fact that the Joint Venture is a "creditor" of the Debtor, as broadly defined under the Bankruptcy Code.  Courts agree that an antecedent debt owed by a debtor occurs when a right to payment arises— even if the claim is not fixed, liquidated, or matured.  *See United States*

*Trustee, et al., v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc.)*, 180 F.3d 504, 511 (3d Cir. 1999). Here, the right to payment arose upon execution and by virtue of the UCC Subcontract. This reasoning also extends to the Capitol Hill and Marriott Subcontracts, which contained identical indemnification provisions to the UCC Subcontract. Tompkins obtained a contingent claim against Spartan upon execution of the Capitol Hill and Marriott Subcontracts.

Courts have reached this same conclusion under various circumstances. For instance, in *The Official Committee of Unsecured Creditors of Enron Corp., et al. v. Whalen (In re Enron Corp.)*, 357 B.R. 32 (Bankr. S.D. N.Y. 2006), the United States Bankruptcy Court for the Southern District of New York held that a transfer was made on account of an antecedent debt for purposes of 11 U.S.C. § 547(b) where a retention bonus was paid before the obligation to pay the bonus became due. The Court concluded that a "debt" arose upon execution of an employment agreement that provided for payment of a bonus, even though the right to payment of the bonus did not occur until later. The Court conducted a thorough analysis of what constitutes an "antecedent debt" and noted that "the case law reveals an obvious trend interpreting 'antecedent debt' broadly and rejecting the proposition that debt is only incurred as it becomes due." *Id.* at 44. This reasoning applies to the facts and circumstances of this case. As previously stated, Spartan's debt to the Joint Venture arose upon execution of the UCC Subcontract by virtue of its indemnification provisions. It is irrelevant that the Joint Check was issued pursuant to the Assignment. As previously mentioned, the Assignment was not perfected and did not give the Joint Venture a security interest in the proceeds of Spartan's other contracts. Rather, Spartan's contingent liability arising from the UCC Subcontract is sufficient to create an "antecedent debt" for preference recovery purposes. As such, the Trustee has met his burden on all of the elements

of 11 U.S.C. § 547(b) and is entitled to judgment on Count I.  Although the Defendants set forth several affirmative defenses in their Amended Answer in addition to the setoff defenses previously discussed, the Defendants failed to meet their burden to present evidence to support these defenses.

Although the Trustee prevails on Count I, the Court will briefly address the merits of the three remaining counts of the Amended Complaint.  With regard to Count II, which seeks avoidance of the Assignment and any transfers made thereto as fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550, the Court finds that had there been no antecedent debt, the Trustee would prevail on Count II against both Defendants.  If, as the Defendants maintain, Spartan did not owe a debt to the Defendants at the time of the Transfers, then the Debtor received "less than a reasonably equivalent value in exchange for such transfer or obligation."  11 U.S.C. § 548(a)(1)(B).  Had there been no debt, and the Vendor Payments were made with funds the Joint Venture owed the Debtor for work already performed, then there was simply no consideration for the transfer of the Joint Check to the Defendants.  However, having determined the existence of an antecedent debt, this Court finds in favor of the Defendants on Count II.

As for Count III, which seeks avoidance of any post-petition transfers made pursuant to the Assignment under 11 U.S.C. §§ 549 and 550, the Trustee did not present any evidence of the existence of any post-petition transfers.  Accordingly, judgment in favor of the Defendants on Count III is warranted.  Similarly, the Trustee presented no evidence to support Count IV, which seeks disallowance of any claim pursuant to 11 U.S.C § 502(d).  The Defendants never filed a proof of claim in Spartan's bankruptcy case.  Thus, there is no claim to be disallowed and the Defendants prevail on Count IV.

## V. Conclusion

For these stated reasons, the Court determines that the Trustee prevails on Count I of the Amended Complaint and judgment shall be entered in favor of the Trustee and against the Defendants in the amount of $150,222.32.  For the reasons set forth above, judgment will be entered in favor of the Defendants on the remaining Counts II, III and IV.  An Order consistent with this Memorandum will be entered contemporaneously herewith.


cc:     All Parties
        All Counsel


**END OF MEMORANDUM**